HILL v. STORRS. See Case No. 1,291.

HILL (STOUGHTON v.). See Case No. 13,501.

HILL (STRING v.). See Case No. 13,535.

HILL v. TOWNS. See Case No. 16,534.

---

## Case No. 6,500.

### HILL et al. v. The TRIUMPH.

[2 N. Y. Leg. Obs. 115.]

District Court. S. D. New York. July 27, 1841.

SEAMEN'S WAGES—FORFEITURE—COSTS.

1. On a libel being filed in admiralty on the civil side of the court to recover seamen's wages, it appearing that the libellants had been guilty of insubordinate and mutinous conduct on the voyage, yet their having subsequently performed duty on board, and having aided in bringing the vessel safely into port: *Held,* that their wages should not be totally forfeited.

2. Where the libellants were guilty of such insubordinate and mutinous conduct on board of the vessel on the voyage, and the master had arrested and imprisoned the libellants on a criminal prosecution for the offence, they should not in addition to the punishment for the criminal offence charged against them, absolutely forfeit their wages for the voyage.

3. Where one of the libellants had been guilty of embezzling the cargo, and had abandoned the vessel without leave before the final relinquishment by the master of prosecuting the voyage according to the original contract. he, the libellant. should not recover wages, although criminally punished for the offence of mutinous and disorderly conduct on shipboard.

4. Where a suit had been brought against a vessel by summons or citation before the ten days had expired, mentioned in the act of congress of 1790. § 6 [1 Stat. 133], and the master of the vessel had neglected to appear upon such summons and show cause, and the proceedings were taken by default against the vessel: *Held,* that the claimants were not bound to answer in bar of the suit, and that it had been prematurely brought.

5. The respondents were bound by the acts of the master, and when the master had arrested and imprisoned the crew on a criminal charge before the voyage was ended, and when one of the crew had been discharged on a hearing before the magistrate from the criminal complaint, and the others had been committed to prison and were awaiting the trial, and no orders of the master had been given that such prisoners should return to duty when discharged, this worked a discharge of the crew from the vessel and absolved the relationship of master and seamen.

6. Costs are in the discretion of the court in admiralty cases, and the court in the present case decreed such costs as the libellants had actually paid to the marshal and the clerk of the court, but not generally in the cause.

7. Where the principles of a cause had been settled by a decree upon hearing, the libellants should recover such prospective costs generally in the cause, as they might be put to should the claimants and respondents further litigate the suit.

8. Seamen might recover their wages and claims for short allowance on the voyage, although they had been guilty of mutinous and disobedient conduct, where they had afterwards returned to duty and been criminally prosecuted for the offence.

9. Although they recovered their claims in full as charged in the libel, yet the court would grant them costs in whole or in part, according to the incumbrances and equities of the case.

This was a libel in admiralty filed by the libellants against the brig Triumph for a balance of wages due them on a voyage from New Orleans to the city of New York. The vessel sailed from New Orleans in the month of March, 1841, and arrived at the port of New York the 6th of May following. The libellants were seamen, and shipped for the voyage and to return. The first article of the libel stated that the libellants shipped at the rate of $15 per month, and signed the usual shipping articles. The second article set forth that they arrived in New York in the month of May, 1841, and were discharged. Under this article the libellants offered proof, that while the vessel lay in the stream in this city, in the East river, they were taken out of the ship by the United States marshal of the Southern district of New York, and committed to prison upon the complaint of the master, where they had remained during some thirty days awaiting for a trial upon a charge of disobedience of orders, and an endeavor to make a revolt and mutiny on board of said vessel on said voyage, and they claimed that in point of fact these acts of the master were a discharge of the libellants out of the service of the ship, and that they had been discharged if not in point of fact by the master, they had been discharged by act and operation of law. The third article alleged the faithful performance of duty. The fourth article alleged that on the voyage, the libellants had been kept on short allowance for 15 days, and they claimed double pay under the act of congress passed July 20, 1790 (section 9). The libel was filed upon a summons issued May 9th, 1841, pursuant to the act of congress passed July 20, 1790 (section 6); and it appeared the summons having been served in the regular way, by leaving the same on board of the ship, the master neglected to appear on the return day, the 10th of May, and the certificate of the judge that time was sufficient cause of complaint whereon to found admiralty process against the vessel was taken by default, and the attachment was issued pursuant to the act. The master intervened by his proctor, and stated in the first article of his answer that the voyage commenced at New Orleans on the 30th of March, 1841, that the libellants signed shipping articles for a voyage from New Orleans to New York, and back to New Orleans, and that the voyage did not terminate at New York. In the second article of the answer he set forth by way of defence, that the cargo of the vessel had not been discharged when the attachment was issued and the vessel arrested in this suit, and that the libellants had not been released from their contract which was in full force and effect. The third article of the answer set forth that the libellants revolted and mutinied on the 17th of April, on this voyage, and they refused to do duty and assumed the command of the vessel in opposition to the will of the master, and for some time had the control and management of the vessel in opposition to the wishes and commands of the master. The fourth article of the answer set forth that the libellants had plundered the cargo and embezzled one barrel of gin on the voyage. The fifth article of the answer set up the desertion of James Hill, from the vessel at the port of New York, on the 6th May, before he was arrested, and that he was continually absent from the vessel from thence hitherto, without the consent of the master or any officer thereof. The sixth article of the answer set forth a denial that the libellants were put on short allowance, and alleged that on the 22d of April, on the voyage, the galley and cooking apparatus were washed away in a storm, and the cooking of the vessel was discommoded by the perils of the seas. The cause came on to hearing. It appeared that Ward and Cook were arrested May 6th, 1841. Hill was arrested May 7th, while on shore, and after he had left the vessel. The libellants were examined May 8th, on the criminal charge, before the committing magistrate, when Cook was discharged, but he had not been directed by the master to return to duty in the vessel. The master was present at the examination as a witness before the committing magistrate, and knew that Cook was at large.

Upon the argument of the cause, the respondents to the first point set up by way of defence that the suit had been prematurely brought, that under the act of congress no process could be issued against the vessel under ten days, and that although a summons had been issued, yet the libellants had done this at their peril, and that the master was not bound to take any notice of the summons, but might come in and set up by way of defence at the hearing, that the suit had been prematurely brought and therefore the libellants' suit must be dismissed with costs, and referred to several authorities upon the doctrine of bringing suits before the right of action accrued. To this ground of defence, the libellants' advocate replied, that here was a dispute between the master and seamen in regard to their wages, and that the men were entitled to their rights under the maritime law at once,—that they had been discharged from the vessel by the acts of the master, and the voyage broken up, and cited the act of congress 1790 (section 6). They further replied, that in cases of admiralty jurisdiction, the courts are required to proceed according to the practice of the civil law, and that the summons is a process known to that law under the name of "citation" (see Act Cong. 1789 [1 Stat. 93]; The Adeline, 9 Cranch [13 U. S.] 244), and particularly referred to 4 Chit. Gen. Prac. 143; and urged that the effect of the defendants not appearing at the time, was a default and contempt, and that all the claimant could do was to contest the claim on its merits on the ground of payment or forfeiture. That by the civil law the summons or monition might be served personally, or by affixing it upon the outer door of the defendant's house, or upon the church door. In the latter cases it is called a "service viis et modis," and they cited Proc. Prac. 75; Betts, Prac. 63; 2 Clerke, Prac. tit. 9. They again urged that the party respondent had omitted to make a defence in the first instance, and that he had decoyed the libellants into an expensive litigation, and the court would frequently compel a party to pay costs, although the libel against him was dismissed (cited Dunlap. Prac. 102; 4 Paige, 450), and urged that the defendant and respondent, in any event, ought to pay the costs of this suit, which are in the discretion of the court (Hagg. Ecc. 195; 7 Ves. 28; 2 Atk. 552).

No distinct averment had been made in the answer that the suit had been prematurely brought, and for want of such a special allegation the libellants could not be prejudiced in this stage of the case, and that the respondent must answer the cause on its merits. 1 Chit. Pl. 474; The Crusader [Case No. 3,456]. The respondents' advocate, in the next place, alleged that the contract of the libellants was in full force, they not having been discharged from the vessel, and no right of action having yet accrued by the terms of it. To this it was replied that Cook

had been discharged by the tacit consent of the master, which was as good as an express consent, and that the acts of the master had discharged the other two from the vessel. The respondents then urged that the embezzling of the cargo and disobedience of orders on 17th April, forfeited the wages and cited Abb. Shipp. 471. It was proved that Hill, one of the libellants, broached the barrel of gin on the voyage, but there was no evidence direct to show that Ward and Cook participated in it. Hill admitted this offence to one of the witnesses, and stated that he had broached a barrel of gin, and had taken a hand-saw and sawed off the hoops and passed them on deck, and threw the hoops and staves overboard on the voyage, after a large portion of the gin had been drunk up on board. In regard to the disobedience of orders, it appeared that the vessel ran on the breakers off Cape Hatteras, by somewhat of negligence in the master and officers to watch their soundings. This was at the eastward of the Dry Tortugas shoals, on the voyage from New Orleans to New York, on the 27th April. That the serf and breakers ran over the vessel's deck and swept away the galley and cooking-house, and that for two or three days before 22d April the men had been a good deal on deck, much wet, up at nights, without any warm drink or victuals, and on one occasion particularly, the day after the vessel got off Cape Hatteras' shoals, the men went below, refused to come on deck and do any more duty that day; that from that time for several days, the men had refused duty, and finally had set the captain at defiance, and alleged that he did not know navigation, and the mate took the command of the vessel. A gale of wind came on, but the libellants generally assisted in the navigation of the vessel to New York. To a question put to the mate, when he was asked, whether either of the libellants had committed a riot on board, he answered, "Yes, they did amongst themselves." One of the witnesses testified, that the libellants, after the vessel ran on to Cape Hatteras, appeared several times pretty drunk. One of the witnesses testified, that the captain was below when the vessel ran on the shoals; that the three libellants had previously remonstrated with the captain in regard to running in so near the land, previous to striking the shoals; that at Cape Florida the men remonstrated with the captain about running so near Florida reef. The libellants' advocate contended that the master, having undertaken to punish the men by a criminal prosecution, he could not now set up a forfeiture of the wages for the same offence (Luscomb v. Prince, 12 Mass. 576; 6 Mass. 348); and further urged, that no person could be twice punished for the same offence; that the court ought to decree payment of the wages under such circumstances that the respondent had had his election to plead a forfeiture of the wages, for

refusal to do duty and for a disobedience of orders, and dismiss the libel with costs to the libellants, or to arrest them for a criminal prosecution; that having elected to proceed by a criminal prosecution, that he was bound to abide by it, and could not avail himself of a plea of forfeiture.

It appeared in evidence, that on one occasion during the voyage, when at the wheel, Hill had assaulted the captain who came aft to give an order in regard to the steering of the vessel. The counsel for the respondents urged that Hill, one of the libellants, had evidently deserted the vessel at New York, and thereby forfeited the whole of his wages, and could not, in any event, be entitled to recover. The libellants' counsel urged, that there could be no forfeiture after the voyage was ended, and that it evidently was the intention of the master to have terminated the voyage at the port of New York, inasmuch as he had arrested the crew in a criminal prosecution, and cited Edwards v. The Susan [Case No. 4,299]; Thompson v. The Philadelphia [Id. 13,973]; Swift v. The Happy Return [Id. 13,697]. The respondents' counsel also urged that the court was bound to forfeit the wages of the whole of the crew for disobedience of orders during the voyage. To this it was replied that the crew on the 17th April, were put on short allowance of meat, and had been deprived of warm drink and food from the loss of the galley; and it further appeared, that they had been put on short allowance of even cold water, and that their refusal to do duty under such circumstances, was not enough to forfeit their wages, especially when the master was prosecuting them criminally for this offence, and stated, that although the captain went below and the mate took command of the vessel at Cape Hatteras shoals, yet they brought the vessel into port and returned to duty. Abb. Shipp. p. 473, notes 1, 2, p. 472. The respondents' counsel cited various authorities to sustain the positions that they had advanced during the argument, and referred to Dunlap, Adm. Prac. pp. 96, 99, and to Act Cong. 1790, § 5.

Nash & Noble, for libellants.

Robinson & Benedict, for respondents.

BETTS, District Judge. This cause, having been heard upon the pleadings and proofs, and it appearing to the court that the libellants, James Cook and Peter Ward, were duly discharged from the vessel by the master thereof before suit brought, and it furthermore appearing to the court that, although the said two libellants were guilty of insubordinate and mutinous conduct on the voyage in the pleadings mentioned, yet, that having subsequently performed duty on board and aided in bringing the vessel safely to port, and having also been arrested and imprisoned on the complaint of the master on a criminal prosecution for said offences the libellants ought not, in addition to punishment for the criminal offences charged against them, to forfeit absolutely their wages for the voyage. It is therefore, ordered, adjudged and decreed that the said Peter Ward and James Cook recover their wages due according to their agreement in this cause; and unless the proctor for the claimants consents, that a decree be entered for the amount demanded by the libel, it be referred to the clerk to compute the amount of wages due the said libellants respectively and report thereon with all convenient speed; but because of the gross misconduct of the said libellants on the said voyage, it is further ordered and decreed, that they recover costs only to the amount actually paid the marshal in this cause, and also the expenses of the reference to the clerk, if such reference shall become necessary under the conditions of this decree. And it appearing to the court that the libellant Jas. Hill abandoned the said vessel without leave before the first prosecution of her voyage was relinquished by the master, and never afterwards returned to duty on board, and that he was guilty of embezzlement of part of the cargo of the said vessel on her said voyage, it is ordered and decreed that the libel on his behalf be dismissed with costs against him to be taxed.

[Further proceedings upon the distribution upon the sale of the vessel are given in Case No. 14,182.]